**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | Case No. 14 C 4343 |
| v. | ) | |
| | ) | |
| DAVID CONRAD, | ) | |
| | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On June 10, 2014, Petitioner David Conrad ("Conrad" or "Petitioner"), by counsel, filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Petitioner's § 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**PROCEDURAL BACKGROUND**

On November 16, 2005, the government filed an information against Petitioner and on January 23, 2007, a federal grand jury returned a Superseding Indictment charging him with eight counts of possessing, transporting, advertising, and distributing child pornography in violation of 18 U.S.C. §§ 2251(c)(1)(A), 2251(d), 2252A(a)(2)(A), 2252A(a)(1), 2252A(a)(5)(B), 2252A(b)(1), and 2252A(b)(2). In particular, the Superseding Indictment charged that on July 12 and 14, 2002, and October 24, 2002, Petitioner advertised, received or distributed, transported, and possessed at least six video images containing child pornography.

On February 5, 2010, after a two-week trial at which fourteen witnesses testified and dozens of exhibits were admitted into evidence, a jury found Petitioner guilty on eight counts of

possessing, transporting, advertising, and distributing child pornography.  At Petitioner's sentencing hearing in April 2010, the Court concluded that the applicable Sentencing Guidelines range pursuant to the 2009 version of the Sentencing Guidelines was 360 months to life.  The Court then sentenced Petitioner to 198 months in prison.  Also, based on long-standing Seventh Circuit precedent, the Court rejected Petitioner's argument that the Court should apply the Sentencing Guidelines in effect at the time he committed the crimes.  *See United States v. Demaree,* 459 F.3d 791 (7th Cir. 2006).

Petitioner filed his notice of appeal on April 24, 2010.  On appeal, Petitioner argued that the Court erred in denying his motion to suppress evidence recovered from his parent's home and that the Court erred when it applied the Sentencing Guidelines in effect at the time of his sentencing.  Relying on *Demaree*, the Seventh Circuit affirmed Petitioner's conviction and sentence on March 14, 2012.  *See United States v. Conrad,* 673 F.3d 728 (7th Cir. 2012).

On June 10, 2014, Petitioner, by counsel, filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  On August 21, 2014, after the parties had fully briefed this motion, a grand jury returned an Indictment against Petitioner's defense counsel, Beau Brindley.  Mr. Brindley was Petitioner's attorney at trial and on appeal, and also represents Petitioner in the present motion.  On September 4, 2014, the Court held a hearing and advised Petitioner that Mr. Brindley had been indicted in the United States District Court for the Northern District of Illinois.  Further, the Court advised Petitioner of the potential conflicts that could arise under the circumstances and appointed an attorney with the Federal Defender Program as independent counsel for the conflict consultation.  After consulting with independent counsel, Petitioner knowingly and voluntarily waived any potential conflict and agreed to have

2

Mr. Brindley continue representing him in this matter. *See United States v. Hubbard,* 22 F.3d 1410, 1418 (7th Cir. 1994).

**FACTUAL BACKGROUND**

Palos Heights Police Sergeant Michael Zaglifa was conducting an undercover investigation of on-line child pornography distribution on July 12, 2002, and October 24, 2002. During each of those undercover sessions, Sergeant Zaglifa entered a chat room with a name suggestive of child pornography and saw an individual, using the nickname "v^sickboy^v" in July and "EvolDSL" in October, advertising child pornography videos and offering to distribute them from his F-serve in return for additional child pornography. During both undercover sessions, Sergeant Zaglifa made a direct connection with the individual's F-serve and, after uploading encrypted files, downloaded child-pornography from the F-serve to his computer. At trial, an internet-service-provider ("ISP") representative testified that the individual running the F-serve initiated the sessions with Sergeant Zaglifa from the same physical location.

After Sergeant Zaglifa, with the assistance of the ISP, traced the individual's IP addresses for each of the undercover sessions to Rogers Machinery Sales ("Rogers Machinery") – a business that Petitioner's father, Roger Conrad, owned – law enforcement agents obtained a warrant to search Rogers Machinery. On December 20, 2002, one team of law enforcement agents executed the search warrant at Rogers Machinery, while a second team went to Roger Conrad's Geneva, Illinois residence ("Geneva Residence"). When law enforcement agents searched Rogers Machinery, they found no evidence of child pornography or F-serve software.

While, at the Geneva Residence, Petitioner agreed to accompany law enforcement agents to his apartment on Milwaukee Avenue in Chicago. After arriving there, Petitioner signed a

3

waiver of his *Miranda* rights, consented to searches of his Milwaukee Avenue apartment and computers, and admitted, among other things, that he had used his laptop computer to run the F-serve and had advertised and solicited pornographic movies. Law enforcement agents showed copies of printouts from Sergeant Zaglifa's undercover sessions to Petitioner, who wrote brief statements on them and signed them to indicate that he had been engaged in the activity during the undercover sessions.

Law enforcement agents forensically tested Petitioner's computers in 2003-04 and found on his computer child pornography and text logs in which he had used nicknames that were similar to the nicknames and trigger words that he had used during the undercover sessions. Again, in June 2009, the Government forensically examined Petitioner's computers, this time pursuant to a search warrant. Using superior software than that used in 2003-04, Paul Rettig, a Computer Forensic Examiner with the Chicago Regional Computer Forensics Laboratory, found additional chat logs and child pornography on Petitioner's computers, including one of the charged videos. In addition, Rettig found that the advertisements from the July 14, 2002, undercover session matched the advertisement found in a July 14, 2002, text log from one of Petitioner's computers. Also, Rettig found documents on another of Petitioner's computers indicating that he had used variations of the name "Evol" for his business.

At trial, Petitioner's forensic expert, Tami Loehrs, testified that one of Petitioner's computers could not have been used to run the F-serve containing the child pornography because it had insufficient capacity to hold that many video files, that another user was physically using the computer, and that someone could have gained remote control of Petitioner's computer to run the F-serve. Loehrs also testified that the way in which law enforcement agents handled this

computer made the June 2009 testing unreliable. She conceded, however, that there was no evidence that law enforcement agents had planted any evidence on Petitioner's computers or turned back the clocks on the computers. In rebuttal, FBI Special Agent testified that Petitioner had spoken with the government in April 2007, at which time he stated, among other things, that no one else had physical or remote access to his computer and that he had set up the F-serve and offered to trade child-pornography.

## LEGAL STANDARD

"Relief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878 -79 (7th Cir. 2013); *see also Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). More specifically, under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). Accordingly, a § 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under 2255 "will not be allowed to do service for an appeal").

## ANALYSIS

I.  **Ex Post Facto Violation**

Petitioner brings one claim in his § 2255 motion, namely, that the Court erred in applying the 2009 Sentencing Guidelines as opposed to the guidelines in effect at the time of his offense in violation of the Ex Post Facto Clause. Petitioner admits that he brought this claim on appeal to the Seventh Circuit, but that since the Seventh Circuit's March 14, 2012 decision, the Supreme Court decided *Peugh v. United States,* 133 S.Ct. 2072 (2013), overruling the Seventh Circuit's decision in *Demaree*. Normally, a § 2255 petitioner is barred from bringing the same argument in his 2255 motion as he did on direct appeal. *See Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (§ 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). Under the circumstances, however, based on the *Peugh* decision, the Court will address this argument.

In *Peugh*, the Supreme Court held that the Ex Post Facto Clause is violated "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Id.* at 2078. The Seventh Circuit, nonetheless, has concluded that the rule announced in *Peugh* does not apply retroactively on collateral review. *See Hawkins v. United States,* 724 F.3d 915, 917 (7th Cir. 2013). To clarify, in *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality), the Supreme Court set forth the standard for determining the retroactive application of a new constitutional rule. As the Supreme Court teaches:

> In *Teague* and subsequent cases, we have laid out the framework to be used in determining whether a rule announced in one of our opinions should be

> applied retroactively to judgments in criminal cases that are already final on direct review. Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review. A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a "watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."

*Whorton v. Bockting,* 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) (internal citation and citations omitted). Based on these principles, the *Hawkins* decision explains:

> A decision is retroactive if it is a "substantive" decision but (with immaterial exceptions) not if it's a "procedural" one. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms.... Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.... New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.

*Hawkins*, 724 F.3d at 917 (internal quotations and citations omitted) (emphasis in original). Accordingly, the Seventh Circuit concluded that "errors in applying the advisory guidelines are procedural," and thus *Peugh* is not retroactive on collateral review. *See id.*

In his reply brief, Petitioner argues that *Hawkins* is not applicable to the present case. In doing so, Petitioner fails to address the *Teague* standard for applying new constitutional rules retroactively. He does not argue, for example, that the *Peugh* rule is substantive, which would be a stretch because the *Peugh* Court itself stated that "failing to calculate the correct Guidelines range constitutes procedural error." *Id.* at 2083. Further, Petitioner does not contend that the *Peugh* rule is a watershed rule of criminal procedure that implicated the fundamental fairness and accuracy of the his criminal proceedings. *See Whorton,* 549 U.S. at 416.

Instead, Petitioner argues that his case falls under the exception articulated by the *Hawkins* decision based on a pre-*Booker* case where the court sentenced the defendant when the guidelines were still mandatory. *See id.* at 918 (citing *Narvaez v. United States,* 674 F.3d 621 (7th Cir. 2011)). Such is not the case here, where the Court sentenced Petitioner after *Booker* set forth the present discretionary sentencing regime and his sentence does not exceed the statutory maximum. *See United States v. Coleman,* ___ F.3d ___ 2014 WL 3956731, at *2 (7th Cir. Aug. 14, 2014) (an "error in calculating the Guidelines range did not constitute a miscarriage of justice for § 2255 purposes given the advisory nature of the Guidelines and the district court's determination that the sentence was appropriate and that it did not exceed the statutory maximum.").[1] Indeed, the Court sentenced Petitioner below the applicable Guidelines range.

Accordingly, because the Seventh Circuit affirmed Petitioner's sentence on March 14, 2012 and the *Peugh* Court announce its new procedural rule on June 10, 2013, *Peugh* does not entitle Petitioner to any relief sought in his § 2255 motion.

## II. Evidentiary Hearing

Because the motion, files, and records of this case conclusively show that Petitioner is not entitled to any relief under § 2255, the Court need not hold an evidentiary hearing under the circumstances. *See Yu Tian Li,* 648 F.3d at 532; *Koons v. United States,* 639 F.3d 348, 354-55 (7th Cir. 2011); 28 U.S.C. § 2255(b).

---

[1] The Court rejects Petitioner's arguments based on *Whiteside v. United States,* 748 F.3d 541 (4th Cir. 2014), and *Spencer v. United States,* 727 F.3d 1076 (11th Cir. 2013), for the same reasons the Seventh Circuit rejected these cases in the *Coleman* decision, namely, that both the Eleventh and Fourth Circuits have since granted en banc review and vacated these opinions. *See Coleman,* 2014 WL 3956731, at *3.

8

**III.     Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Therefore, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present Memorandum, Opinion, and Order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Fleming,* 676 F.3d 621, 625 (7th Cir. 2012). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Petitioner has not established that jurists of reason would debate that the Court should have resolved his § 2255 motion differently in light of the Seventh Circuit's decisions in *Hawkins* and *Coleman*. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** September 24, 2014

        **ENTERED**

        */s/ Amy J. St. Eve*
        **AMY J. ST. EVE**
        **United States District Court Judge**